17-0-6-2-3. Enraged marriage of Patricia B. James, positioner of Appalooke, and William B. Good, respondent of Appalooke. Arguing on behalf of the respondent of Appalooke, Mr. Kendrew T. Smith. Arguing on behalf of the positioner of Appalooke, Mr. Tyler B. Slatter. Mr. Smith. Mr. Smith. May it please the court. You may proceed. Thank you, Your Honor. First and foremost, this court has jurisdiction pursuant to Supreme Court Rule 303 after a full trial and hearing in any post-conviction or, I'm sorry, post-trial petitions. There's a pretty simple issue before Your Honor this morning is the effect of the changes or amendments or additions to 750-ILCS-5-503, in particular subsection B-1 and A, subsection A-6.5. Effective January 1 of 2016, the state legislature once again added exceptions to what is presumed to be marital property under the statute for purposes of the division of the marital property as marital or non-marital property in a divorce proceeding. Significance of those two subsections, this is a fairly lengthy statute of six pages, and the entire first page of the very first two subsections are the exceptions to the whether or not property is marital property and fits the presumption if it was purchased or acquired after the marriage. This particular case, there is no question based on the uncontroverted, uncontested facts and evidence presented to the trial court that this was clearly my client, William Bill Winecoop's non-marital property. Let's talk about the did he pay in cash? If I recall from my recollection of the evidence, Justice Spence is approximately $270,000. That's the total? That was the total. How much of that was cash? Yes, I believe that was cash. My understanding from the facts is that that was money that ARC, his premarital, non-marital corporation had saved in a separate corporate account, and that was paid to purchase that property, and I believe it was June of 1991. Well, he financed part of it, didn't he? I mean, that's why the bank was involved. Well, Justice Spence, I think there was some confusion on the part of our client, Bill, when he testified as to the sequence of events of what really is one entire business transaction over a 10- to 12-month period. The loan that he obtained was for the construction of the new business, the custom-built business, on the Coliseum Drive property at the time. That loan that he had referred to, looking at the documentary evidence and exhibits presented, occurred in, I believe it was December 8th or thereabouts of 1999, so roughly five, six months after the actual purchase of the Coliseum Drive property. The settlement documents that are in the record, right? Correct. Don't they show that at the closing, the sale price was $270,000, of which $70,000 was cash and $200,000 was financed? That could be correct, Judge. Is it in the record or not? I believe what Your Honor says is correct. So, if it was financed and only $70,000 of it was cash, then that means $200,000 was borrowed. Is that correct? I would say that is correct. Now, are there any records, actual physical records, as to where that $70,000 came from? Not that I'm aware of. I do not believe it was presented as evidence at trial that I can recall. Presumably, there would be some bank record someplace that would document that, wouldn't there be? I would presume the same, Your Honor. Okay. Thank you. Now, one of the things covered by these exceptions is if property is determined, if it's set up for estate or tax purposes. Yes. Okay. Now, we have some testimony from one of the persons, he's listed on page 18 and now I can't find his name, Arthur Johnson, set it up for, said, let's do it for tax purposes. What tax purpose did he identify? I don't know that he necessarily got into all of the specifics, but that is how they had to purchase the original premarital 35th Street property that the business was originally located on as well. That was years before he... I understand that. And what I read from the record is, okay, we're going to do this for tax purposes. However, the 35th Street property was in your name, so let's leave this in your name. What's the tax purpose for that? Well, I don't claim to be an accountant. However, he said that is usually what he advises his clients to do because what followed from there then is then the corporation then paid bill, rent, I believe, to cover the mortgage, property taxes and all on the property. This is done frequently. It's the most common thing that occurs rather than, oh, it's income to the corporation, which I believe would have been then potentially taxed at a higher rate. Again, I don't claim to be an accountant, but Mr. Johnson testified that he did that. In most cases, that's what he advised a client to do. I guess my point then is if we're trying to, or if you were trying to put this in that exception, and you highlighted that in your brief, that that's important to this decision, we need to look for the proof of the tax purpose. And I'm trying to find it in this record. Just saying it's for tax purposes is usually not enough to fit anything. I mean, I don't know what that means, and that's why I'm asking you what did it mean. And candidly, I don't think there's a lot of testimony at court other than, well, this is what I told my other clients. I don't know. You know, just because he's told ten lines doesn't mean it's for tax purposes. And I think this is a matter of proof. Is there anything else in this record that identifies the tax purpose for this, for the way Coliseum is held or is considered? Well, Justice – The drive, the property. Justice Hutchins, I would argue that conversely, that there is no evidence to the contrary. There's nothing that contradicts it, that that wasn't the reason it was done. But whose burden is that? Pardon? But whose burden is it to establish that? The person who's taking the position, Mr. Wynkoop in this case, to establish, as the section, subsection B1 on the statute says, it is his burden to show by clarifying convincing evidence. He himself testified, that's why he did it, on advice of Mr. Johnson, his longtime accountant. And Mr. Johnson testified in the same thing. It's uncontroverted evidence in the case. The court isn't to assume facts not of record, nor is this court. The trial court is not, of course, nor is this court. So both of them testified that was the reason for doing it. But I would also, in addition, add to that, is significantly under that as well, is that statute doesn't say – what the statute says is, if the property is transferred into some type of co-own, even if it's transferred into some type of co-ownership, and I believe I addressed this in my reply brief in response to the plaintiff's brief, is the position taken is, oh, well, it wouldn't be marital if he had just taken title to jointly with her. That statute cannot mean that. That's saying even if it gets somehow put in her name as well, the other spouse's name. In this particular case, he kept it in the course of businesses he had always done in his own individual name. You know, this could go down the road of, are we to turn the law upside down on its head if someone clearly, I believe Your Honors would agree, the case law and statutes are clear on this, is if someone in the course of marriage receives an inheritance and cash, $100,000, name and number, and they receive that and put it in their own individual account, it's never commingled, it's never transmitted into marital property, I think without question it maintains that non-marital status. Clearly the statute provides it under subsection A of 503. All right. The problem that we have, did the parties actually agree that ARC, the business, was Mr. Winkloops? Well, the trial judge. They agreed that. Yes, they stipulated it was his non-marital business. But they had a contest on coliseum, on the actual property. Correct. And the statute starts with the presumption that anything acquired during the marriage is marital property. And you have to overcome that presumption by evidence. And as I said, I think the issue of saying it's for tax purposes is a conclusion. It is not necessarily evidence. So what other facts indicated that coliseum, what other issues were identified to overcome this presumption? Well, on top of that, the way the funds came to purchase it came at least in part and or in connection with the very business that the court found to be non-marital. The whole purpose here was to change where his store, if you will, his shop. Well, we have, there's an issue here. The court may not have found it to be non-marital if the parties hadn't stipulated it. I mean, you're relying on the fact that the court says it's non, the ARC is non-marital. The parties agreed it was non-marital. Right? He didn't have to make a decision on that. Well, okay. Justice Hutchison. True, I suppose. The thing is, the uncontroverted evidence is it was incorporated in 1984. I understand that. That was an issue that he could consider. But what he actually considered was the parties have agreed this is non-marital. I'm not going to get involved in that unless it's unconscionable. And he must have found anything unconscionable. So now the contest is Coliseum Drive, the actual physical foundation. And now he has to apply the presumptions in the statute. And the presumption in the statute is it is marital property unless that presumption is overcome by evidence, not conclusions. And so for tax purposes is in my mind a conclusion. So then the next question is where did the money come from? And that seems to be the problem here. How did he get the money for that property? I think it's important to note that the position was never taken that somehow that was marital money. There was no request for a contribution back to the marital estate. They testified to that. And I don't know. I guess I'm a little unclear on your Honor's question because it seems to me that you're saying that direct testimony by two separate witnesses to the same thing is not evidence. It's a conclusion. For tax purposes is a conclusion. On what did they base that? And I didn't see anything when I looked at this record upon what they based that conclusion. I understand that. I'm not saying that there was gone into great detail on direct or cross examination. I'm not taking that position. That's what they testified to an accountant. I'm assuming he would be qualified to answer that question. That's how he answered it. What we tell judges to do is look for a paper trail. We don't have a bank deposit, a bank withdrawal, any sort of paper trail that identifies the $270,000 that was the purchase price of Coliseum Drive. Isn't that correct? That is correct. I don't disagree with that, Judge, but this was, what, 16, 17 years before the trial date, and I suppose the best of records weren't kept. That would certainly add to it, but to me it would be cumulative because you have, again, evidence of direct testimony by two of the major players in that transaction, as well as the other documentary evidence as far as the whole purpose. This wasn't to have a piece of property sit there empty. The whole purpose was to, there was testimony about, as well as the loan documents and commitments, et cetera, in December of 99, just months after the Coliseum Drive property was purchased, in which the collaterals laid out that this is a construction loan. It's a construction loan to put the business on that very property. This isn't a business where, oh, just go buy a vacant building and we can move our stuff in there and start up. I mean, I don't think the court decides anything in a vacuum. I mean, this is a model repair shop center. I would think just the EPA or Illinois Environmental Protection Agency's requirements for how you dispose of, I suppose, I don't know, mechanical paint, grease, oil, these things. I mean, this isn't something, oh, one day you quit and have no income and wait to build the other one. It was all part of the same transaction, if you will, that occurred over maybe a 10-, 12-month period. On top of that, as part of the collateral or contingent collateral, it clearly states in there, it clearly stated that the original 35th Street property could have pledged, that's the word I'm using, I'm not sure what the term is, pledges additional collateral if, if I might have missed my train of thought on this, if it wasn't, if the contract for the building or the construction hadn't been completed and that was part of the. Okay, but let's, but then isn't it true, based upon the testimony, that the rent and other things that he got back on, I can't remember the name of the other street. 35th Street. Thank you. Was basically money that he used to, he put it in joint accounts and it was money that sort of paid the bill, the rent, the other things like that. It was his money from 35th Street. The rent and things that he got was his money from, and that's what he used to support his family at the time until the breakdown happened. I'm not, I'm not certain that's entirely correct. I don't disagree. But there were occasions when it happened. I'm sure there were, Judge, as with many small businesses. And I think there's testimony that there were occasions where a rental fee from the rent of the property went into family finances. And that could very well be the case. However, that wasn't an issue before the trial court or even raised by a plaintiff as far as, again, looking at, by way of example, 6.5, subsection 6.5, as far as a request for it to be contributed back to the marital estate. Right. There was a request for reimbursement. I'm aware of that. Okay. Any other questions?  Thank you. Thank you, Mr. Smith. You'll have an opportunity to make your vote. Thank you. Mr. Stack, you may proceed. Slack, Your Honor. Thank you. Pardon? Slack, Mr. Slack. S-L-A-C-K. Good morning, Your Honors. Good morning. Thank you. May it please the Court, Counsel, I want to touch on something Justice Hutchinson brought up because I think she hit the nail right on the head. Where did the money come from? And this also goes along with your point, Justice Spence. The only evidence that the defendant offered in this case was his testimony about the non-marital source of the cash that was used to purchase the realty that is at issue. All of the documents in this case contradict his testimony. And his testimony itself is self-contradicting. And they have the burden. They have the burden to show by clear convincing evidence that it was non-marital property. He testified multiple times. It was $270,000 in cash that he used. To your point, Justice Spence, the document you referenced talked about some financing. He didn't testify to that. That contradicts what he was testifying to. But that was in the closing, the settlement statement. It's on the settlement statement. In the record. But it isn't. It contradicts his testimony. And all he has is his testimony, which is self-contradicting. He even mentioned on direct examination that the proceeds had come from this loan from Northwest Bank. But as we've already detailed and counsel detailed, the timeline does not match up with that. The Northwest Bank loan was in December of 1999. He purchased the property in May of 1999. So those funds could not have come from the loan. He purchased this property in cash nine years after they got married. Where did that money come from? On direct examination, our client, Patricia James, testified that when they got married in 1990, Mr. Winku only had $6,000 to contribute toward the down payment of the house. She contributed $20,000. At that point, he only had $6,000. Nine years later, he's claiming he has $300,000 in account. Where did that money come from? Why would it be marital income? If he took that money out of the business, why wouldn't that be a dividend? It's marital property. There were no documents presented to support his version of the story. There were no bank statements. There were no tax returns. He testified he never even requested the tax returns for trial. If he took that money out of the business, that would be on the tax returns. That would be a dividend. And he never testified that he did that. He did not meet his burden by clear and convincing evidence. He did not show by clear and convincing evidence that funds used to purchase the realty in 1999 came from a non-marital source. When he sold 35th Street in 2000, was there a net or was that a mortgaged property? I believe there was a small net. But, again, that was well after he had purchased the realty in May. I mean, the documents tell the story. Well, the issue that I'm kind of looking at is if he sold it for a net and he took some property, some money from somewhere, he could have put that money back. None of that was used for the purchase of the property. And I believe it was the record shows there was a net. It was a very, very small amount. It was not contributed at all towards the purchase of the realty. He just claimed in his testimony that it came from some bank account. And, again, there's no statements or anything like that to support his side of the story. And I think the case law is pretty clear. That's not enough to meet his burden of clear and convincing evidence. I do want to address the statutory argument, if I may, that they raised. Because I do not believe that the changes to 503b-1, I do not agree with that interpretation. The case law is clear. There is an exclusive way to prove that property that was acquired after the marriage is non-mineral property. That is 503a. There is a certain – it is listed. There are different exceptions that are listed. If the legislature wanted to make a new exception, they would have put it in 503a. They did not. They put that phrase about estate and tax planning purposes in 503b-1. Those phrases deal with the property that was transmuted. It is different than what counsel is claiming. It's a new exception to 503a. In their brief, they claim there are no cases that have addressed this. That is not correct. Brill, it's a Second District case. It was tried after the 2016 amendments. There was an opinion that was published in July of 2017. There was a discussion of 503a. And this court reiterated that 503a is the exclusive means to overcome the presumption that property acquired during the marriage is non-mineral property. So the case law in the plain language of 503b-1 do not support defendant's argument in this case. And they have cited no cases in support of that. Their second argument deals with the amendment to 503 6.5. That exception clearly does not apply because that requires that the collateral for the loan be non-mineral property. The collateral for the loan was a realty, which is mineral property, that was purchased with cash nine years after the marriage. So 6.5 on its face does not apply. So both of their statutory arguments do not apply in this case. The trial judge weighed the credibility of testimony, and he made a finding in his decision that Mr. Wynkoop did not meet his burden of clear and convincing evidence under 503a. Didn't Judge Norquist place some pretty heavy emphasis on the fact that the property was held in his own name as opposed to in the corporate name? Is that just one of the factors to be considered, or is it, as it appears Judge Norquist did here, made it a really, really important factor to be considered? Well, it was certainly one of the factors. It was certainly not the only factor. They had the burden to meet by clear and convincing evidence. And the fact that it was titled in his name individually is pretty clear just because it's in his name individually. If it's during the marriage, it's still mineral property. And he didn't title it in the corporation name. But it's one of many factors. I think the other factor being there were no documents to support his side of the story. It was his own testimony which contradicted itself and contradicted the documents. By him testifying, I think it's in the report of proceedings, it's R34, that he got proceeds from this Northwest bank loan. But that, again, that was six months after the purchase of the property. So I think it was one of the factors to answer your question. When he received the rent back on 35th Street, when Art paid the rent, whatever that amount was, was that often used or put in joint bank accounts to pay for family events? I believe that was the testimony that it was put in a joint bank account. I think our client even sort of handled that. She deposited the check. Because she worked for a while. Yeah. So, again, to my point, if we're trying to figure out where did this money come from, why is that not marital income? It's income they're taking out of the business and using for their regular expenses. And he only apparently had $6,000 available to him in 1990. So they did not meet this heightened burden in this case. They simply did not. Well, it's not marital income because, I mean, they agreed that Art was non-marital property. And at the time, they were getting rent from that non-marital property as joint marital property. I do not believe that there was a stipulation. Talk about stipulation. That there was a stipulation that Art was non-marital property. I believe Plaintiff Counsel did say that they would agree to it being awarded to him, but not to the classification of it being non-marital. Okay. Let me go back just for a minute to 503B1, which reads, the presumption of marital property is overcome by showing through clear and convincing evidence that the property was acquired by a method listed in subsection A of this section, or, and this is the key language, or was done for estate or tax planning purposes, or for other reasons that establish that a transfer between the spouses was not intended to be a gift. Do the words, it was done for estate or tax planning purposes, do those words presuppose that there was a transfer between the spouses? Yes. Yes, Your Honor. So that's a condition. Look at the previous sentence from what you just read there. It talks about transmuted property. Like if someone has a non-marital residence they buy prior to the marriage, and then during the marriage, as often happens, they transfer it into co-ownership, like me and my wife did with Ripe Survivors, so we avoid probate. That happens all the time. That says there's a presumption that it's transmuted property. You can overcome that presumption if you're able to establish by clear convincing evidence that it was something in subsection A or it was done for estate or tax planning purposes. So if the property was never transferred, it doesn't even apply. It doesn't even apply, and it wasn't transferred in this case. It's always been non-marital property. They never met their burden under 503A, so we don't even get to that part of the statute. Just a couple of other notes. In the reply brief, the appellant does admit that the funds used to purchase the realty did not come from the sale proceeds of the 35th Street property, and they also admit that the funds did not come from the Northwest Bank construction loan. Again, that contradicts the testimony of Mr. Wynkoop during direct examination. So the overall argument contradicts his testimony. Again, just looking at the cases, going back to the statutory argument, there's a long line of cases that says 503A is the exclusive means. I do not believe the legislature, by adding that phrase, which really was a codification of the common law. That's what it was. Look at the Gatone case, 2nd District, G-A-T-T-O-N-E. That was a case of transmuted property. So by adding that language, that would have been, if you adopt defendant's argument here, that's going to be a radical change in the law. And there are going to be a number of cases where people are trying to use that phrase, the estate or tax planning purposes, to argue that certain property is non-merit. And that clearly was not the legislature's intention here. It was just a codification of the common law. I think this Court has already recognized that with the case in Brittle, which is the only case that's been cited by either party that had a trial after the 2016 amendment, again, that supports plaintiff's argument in this case. And, again, I think it – I also wanted to mention that the standard of review is agreed upon by the parties in their briefs, and that is manifest way of the evidence. And, again, this was something that was purchased nine years into the marriage, so the presumption clearly applies. And it was their burden, by clear and convincing evidence, to show that it fell into subsection 503A. I think the STIR case, that's a 2016 case, says that we had no burden. We didn't have to provide any testimony or any evidence regarding that issue. It is all on the party claiming that it's non-marital. Assuming you didn't, and I think that's – present any evidence particularly about that, it was argued, however, correct? Yes. Yes, certainly. Certainly. In preparation for argument today, did you look to see if there are any other cases decided in this or any other district about this type of issue? I have been monitoring this, Your Honor. I think there was maybe a Rule 23 order recently by this court, and I think it was Jones, obviously. I'm not citing that or anything like that. But I haven't seen any published cases besides for the Brill case. Well, there have been several other cases decided within the last three months. Okay. One of them being Karsten's, another one being Noyes. I don't think they specifically – and Noyes is M-O-Y-E-S. I don't think they specifically would govern here, but they're out there. Okay. Thank you. Thank you, Your Honor. I'd be happy to answer any other questions the justices might have. I don't have any questions. Thank you. Okay. Thank you. Mr. Smith. Yes, thank you. You're the first, Mr. Smith. Pardon me. Let's see. Let's hold on here. First of all, with regards to the Brill case, that dealt with a gift from the paramour of the husband to the husband, and that was specifically under subsection A-1, which relates to gifts that are received during marriage. Again, I don't believe that any cases have been decided on point as far as what the discussion is here today. Secondly, I totally disagree with the plaintiff's position that the plain language of subsection B-1, or I should say the additions or amendment to it that says, or was done for a state or tax planning purpose or for other reasons to establish that the transfer was not intended to be a gift, is only for the situation where it's the transfer or transmutation of the property. The start of subsection B-1 relates to that specifically. However, that portion that I just read off is to the reference to the overcoming presumption and says, by a method listed in subsection A, so this relates to those exceptions of this section or was done for a state or tax planning purposes. That all interrelates as an additional exception. Again, I think I started out when I was attempting to present you with my argument, is this is a six-page statute that deals with the division of property in a divorce. First determination would be whether or not it's marital or non-marital property, and then, of course, who gets it. Legislature did think this was important because the very first two subsections of the entire statute, one says the presumption if it's purchased after the marriage, and then the rest of it is about the exceptions to that presumption. In this case, you had uncontroverted direct testimony from really three different witnesses, if you include the gentleman from Northwest Bank who also testified in this entire transaction. The court, again, can say, well, this isn't some vacant property that he purchased out here somewhere and put it in his own name. This is clearly, by all the evidence presented, his premarital, not just non-marital, corporation, business. He has to do the business somewhere, and the whole purpose of this purchase was to have the new business, the same business with a new building located on those premises. This wasn't to buy the parties of each home somewhere. This was for this custom-made business that he had started long before now and long before the marriage, long before he met Ms. James. Counsel, part of the section that you're talking about mentions that you have to establish by clear and convincing evidence, which suggests that I'm not quite sure how the presumption doesn't continue if you have to rebut it by clear and convincing evidence. But the section also says that you have to establish that it wasn't intended as a gift. And how could, in this factual scenario, how do you explain how that section applies if that subsection or the reference that I made that this was not intended to be a gift doesn't seem to fit the facts? I respectfully disagree, Justice McLaren. There is no evidence that it was meant to be a gift. Again, the proof is in the footing. It's sort of like the building sits where the building sits where he's doing the business. He never put it in Ms. James' name, joint, or anything else. I mean, the clear gift exception, of course, would be, yeah, he gave it to me, put it right in that this is a wedding gift or whatever. He puts it in his own name. How do you infer that this wasn't intended as a gift if her name isn't on the deed? If, for instance, this property had been put into an inter vivos trust that made his wife a beneficiary of the trust upon a particular act or his death, then not only would you have to prove that there was a transfer of the property into the trust, but you'd have to also prove that it was not intended to be a gift to the wife. So where is it, how do you explain if part or a portion of the element, one of the elements, that it was not intended as a gift when there is nothing to suggest that there has either been a transmutation nor that it was ever intended to be anything but what it was to him? Do you understand how when you supposedly move something that is non-marital and it's moved to some place where it would appear that it is non-marital, but you're claiming that it is still non-marital, then you also have to establish that it's not only for tax purposes, but it also wasn't intended to give the other spouse a gift. And as I believe I was referring to later and had a question come up, I believe from Justice Spence, was by way of example, if you receive an inheritance of $100,000 in cash and you put it in an account that's in your name only and never co-made the will, is the court, is the statute saying then, well, it became marital property because you put it in your individual name. However, if you put it in the name of a corporation or even, like you said, an individual's trust, then it remains non-marital. That's never been the law. I don't believe that's what this statute means. As far as gifts are concerned anyway, Your Honor, respectfully, there would have to be some type of evidence of donative intent to make a gift. Mr. Wynkoop, Bill testified that this was the reason it was done. There is actually no evidence that was presented to the contrary, that it was one ever held jointly, ever presented or given to her. Thank you. Your time is up. We'll take the case under advisement. We have one more case on the call before 10. Thank you for your time.